IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
WESTERN DIVISION

CHAD THOMAS MARCOTTE,

Plaintiff,

vs.

CAROLYN W. COLVIN,
Commissioner of Social Security,

Defendant.

No. C15-4230

RULING ON JUDICIAL REVIEW

## TABLE OF CONTENTS

I.    INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

II.   PRINCIPLES OF REVIEW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

III.  FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

IV.   CONCLUSIONS OF LAW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
      A.   ALJ's Disability Determination . . . . . . . . . . . . . . . . . . . . . . . 5
      B.   Objections Raised By Claimant . . . . . . . . . . . . . . . . . . . . . . . 7
           1.    Irritable Bowel Syndrome . . . . . . . . . . . . . . . . . . . . . . 7
           2.    Medical Source Opinions . . . . . . . . . . . . . . . . . . . . . . 9
                 a.    Dr. Persaud and Dr. Shook . . . . . . . . . . . . . . . 9
                 b.    Dr. Martin . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
           3.    Credibility Determination . . . . . . . . . . . . . . . . . . . . . 17
           4.    Hypothetical Question . . . . . . . . . . . . . . . . . . . . . . . . 21

V.    CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

VI.   ORDER . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

# I. INTRODUCTION

This matter comes before the Court on the Complaint (docket number 4) filed by Plaintiff Chad Thomas Marcotte on November 10, 2015, requesting judicial review of the Social Security Commissioner's decision to deny his applications for Title II disability insurance benefits and Title XVI supplemental security income ("SSI") benefits.[1] Marcotte asks the Court to reverse the decision of the Social Security Commissioner ("Commissioner") and order the Commissioner to provide him disability insurance benefits and SSI benefits. In the alternative, Marcotte requests the Court to remand this matter for further proceedings.

# II. PRINCIPLES OF REVIEW

The Commissioner's final determination not to award disability insurance benefits following an administrative hearing is subject to judicial review. 42 U.S.C. § 405(g). The Court has the authority to "enter . . . a judgment affirming, modifying, or reversing the decision of the Commissioner . . . with or without remanding the cause for a rehearing." *Id*. The Commissioner's final determination not to award SSI benefits is subject to judicial review to the same extent as provided in 42 U.S.C. § 405(g). 42 U.S.C. § 1383(c)(3).

The Court "'must affirm the Commissioner's decision if it is supported by substantial evidence on the record as a whole.'" *Bernard v. Colvin*, 774 F.3d 482, 486 (8th Cir. 2014). Substantial evidence is defined as less than a preponderance of the evidence, but is relevant evidence a "'reasonable mind would find adequate to support the commissioner's conclusion.'" *Grable v. Colvin*, 770 F.3d 1196, 1201 (8th Cir. 2014). In determining whether the ALJ's decision meets this standard, the Court considers "all of the evidence that was before the ALJ, but it [does] not re-weigh the evidence." *Vester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005) (citation omitted). "The findings of the

---

[1] On January 27, 2016, both parties consented to proceed before a magistrate judge in this matter pursuant to the provisions set forth in 28 U.S.C. § 636(c).

Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . ." 42 U.S.C. § 405(g). The Court not only considers the evidence which supports the ALJ's decision, but also the evidence that detracts from his or her decision. *Perks v. Astrue*, 687 F.3d 1086, 1091 (8th Cir. 2012)

In *Culbertson v. Shalala*, the Eighth Circuit Court of Appeals explained this standard as follows:

> This standard is 'something less than the weight of the evidence and it allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the [Commissioner] may decide to grant or deny benefits without being subject to reversal on appeal.'

30 F.3d 934, 939 (8th Cir. 1994). In *Buckner v. Astrue*, 646 F.3d 549, 556 (8th Cir. 2011), the Eighth Circuit further explained that a court "'will not disturb the denial of benefits so long as the ALJ's decision falls within the available 'zone of choice.'" "'An ALJ's decision is not outside that zone of choice simply because [a court] might have reached a different conclusion had [the court] been the initial finder of fact.'" *Id.* Therefore, "even if inconsistent conclusions may be drawn from the evidence, the agency's decision will be upheld if it is supported by substantial evidence on the record as a whole." *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005). *See also Cline v. Colvin*, 771 F.3d 1098, 1102 (8th Cir. 2014) ("'As long as substantial evidence in the record supports the Commissioner's decision, [the court] may not reverse it because substantial evidence exists in the record that would have supported a contrary outcome, or because [the court] would have decided the case differently.' *Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002).").

## III. FACTS

Marcotte was born in 1971. He is a high school graduate. He also attended a technical college for one year. In the past, he worked as farm laborer, power line installer/repairer, and truck driver.

Marcotte filed his application for disability insurance benefits on January 6, 2014, and application for SSI benefits on January 16, 2014, alleging disability due to irritable bowel syndrome, hemorrhoids with severe rectal bleeding, depression, bilateral shoulder disability, and cancer survivor with adrenal tumor surgically removed. He alleged he became disabled on February 16, 2013. His application was denied upon initial review, and on reconsideration. On June 29, 2015, Marcotte appeared via video conference with his attorney before Administrative Law Judge ("ALJ") Jan E. Dutton for an administrative hearing.[2] In a decision dated July 30, 2015, the ALJ denied Marcotte's claims. The ALJ determined Marcotte was not disabled and not entitled to disability insurance benefits or SSI benefits because he was functionally capable of performing work that exists in significant numbers in the national economy. Marcotte appealed the ALJ's decision. On September 25, 2015, the Appeals Council denied Marcotte's request for review. Consequently, the ALJ's July 30, 2015 decision was adopted as the Commissioner's final decision.

On November 10, 2015, Marcotte filed the instant action for judicial review. A briefing schedule was entered on January 19, 2016. On April 18, 2016, Marcotte filed a brief arguing there is not substantial evidence in the record to support the ALJ's finding that he is not disabled and that he is functionally capable of performing other work that exists in significant numbers in the national economy. On May 18, 2016, the Commissioner filed a responsive brief arguing the ALJ's decision was correct and asking the Court to affirm the ALJ's decision. Marcotte filed a reply brief on May 27, 2016.

Additionally, on April 4, 2016, the parties filed a joint statement of facts addressing Marcotte's background, the case's procedural history, testimony from the administrative hearing, and Marcotte's medical history. *See* docket number 14. The parties' joint

---

[2] At the administrative hearing, Marcotte was represented by attorney Laura Seelau. On appeal, Marcotte is represented by attorneys Bryan J. Arneson and Wilford L. Forker.

parties' joint statement of facts is hereby incorporated by reference. Further discussion of pertinent facts will be addressed, as necessary, in the Court's consideration of the legal issues presented.

## IV. CONCLUSIONS OF LAW

### A. ALJ's Disability Determination

The ALJ determined Marcotte was not disabled. In making this determination, the ALJ was required to complete the five-step sequential test provided in the social security regulations. *See* 20 C.F.R. §§ 404.1520(a)-(g), 416.920(a)-(g); *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); *Moore v. Colvin*, 769 F.3d 987, 988 (8th Cir. 2014). The five steps an ALJ must consider are:

> (1) whether the claimant is currently employed; (2) whether the claimant is severely impaired; (3) whether the impairment is or approximates an impairment listed in Appendix 1; (4) whether the claimant can perform past relevant work; and, if not, (5) whether the claimant can perform any other kind of work.

*Hill v. Colvin*, 753 F.3d 798, 800 (8th Cir. 2014); *see also* 20 C.F.R. §§ 404.1520(a)-(g), 416.920(a)-(g). "If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled." *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006).

In considering the steps in the five-step process, the ALJ:

> first determines if the claimant engaged in substantial gainful activity. If so, the claimant is not disabled. Second, the ALJ determines whether the claimant has a severe medical impairment that has lasted, or is expected to last, at least 12 months. Third, the ALJ considers the severity of the impairment, specifically whether it meets or equals one of the listed impairments. If the ALJ finds a severe impairment that meets the duration requirement, and meets or equals a listed impairment, then the claimant is disabled. However, the fourth step asks whether the claimant has the residual

5

functional capacity to do past relevant work. If so, the claimant is not disabled. Fifth, the ALJ determines whether the claimant can perform other jobs in the economy. If so, the claimant is not disabled.

*Kluesner v. Astrue*, 607 F.3d 533, 537 (8th Cir. 2010). At the fourth step, the claimant "'bears the burden of demonstrating an inability to return to [his] or her past relevant work.'" *Jones v. Astrue*, 619 F.3d 963, 971 (8th Cir. 2010). If the claimant meets this burden, the burden shifts to the Commissioner at step five to demonstrate that "'the claimant has the physical residual functional capacity to perform a significant number of other jobs in the national economy that are consistent with [his or] her impairments and vocational factors such as age, education, and work experience.'" *Phillips v. Astrue*, 671 F.3d 699, 702 (8th Cir. 2012). The RFC is the most an individual can do despite the combined effect of all of his or her credible limitations. 20 C.F.R. §§ 404.1545(a), 416.945(a)(1); *Toland v. Colvin*, 761 F.3d 931, 935 (8th Cir. 2014). The ALJ bears the responsibility for determining "'a claimant's RFC based on all the relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of [his or] her limitations.'" *Myers v. Colvin*, 721 F.3d 521, 527 (8th Cir. 2013); 20 C.F.R. §§ 404.1545, 416.945.

The ALJ applied the first step of the analysis and determined Marcotte had not engaged in substantial gainful activity since February 16, 2013. At the second step, the ALJ concluded from the medical evidence Marcotte had the following severe impairments: osteoarthritis/bilateral degenerative joint disease of the AC joints with two shoulder surgeries, history of two hernia repairs, obesity, depression, anxiety, and post-traumatic stress disorder. At the third step, the ALJ found Marcotte did not have an impairment or combination of impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. At the fourth step, the ALJ determined Marcotte's RFC as follows:

[Marcotte] has the residual functional capacity to perform sedentary work. . . .

6

> [Marcotte] can occasionally lift or carry 10 pounds and frequently lift or carry 10 pounds. In an 8-hour day, he can be on his feet standing or walking for 2 hours. [He] has no restriction in sitting. He can frequently do the following postural activities: climb, balance, stoop, kneel, and crouch. [He] can occasionally crawl. His overhead lifting should be limited to no more than occasional. [He] has no restrictions working at shoulder level or below.
>
> Mentally, [Marcotte] can perform unskilled work, which is routine repetitive work.

(Administrative Record at 19). Also at the fourth step, the ALJ determined Marcotte is unable to perform his past relevant work. At the fifth step, the ALJ determined based on his age, education, previous work experience, and RFC, Marcotte could work at jobs that exist in significant numbers in the national economy. Therefore, the ALJ concluded Marcotte was not disabled.

### B. Objections Raised By Claimant

Marcotte argues the ALJ erred in four respects. First, Marcotte argues the ALJ failed to properly consider his diagnosis of irritable bowel syndrome. Second, Marcotte argues the ALJ failed to properly evaluate the opinions of multiple doctors regarding his difficulties with irritable bowel syndrome, including Dr. Persaud (a treating source), Dr. Shook (a treating source), and Dr. Martin (a consultative examining source). Third, Marcotte argues the ALJ failed to properly evaluate his subjective allegations of disability. Lastly, Marcotte argues the ALJ provided a flawed hypothetical question to the vocational expert at the administrative hearing.

### 1. Irritable Bowel Syndrome

In a somewhat confusing argument, Marcotte asserts the ALJ erred in determining he did not suffer from irritable bowel syndrome, contrary to the evidence in the record. Marcotte maintains the ALJ misread medical records from Dr. Persaud, a treating

specialist, who determined Marcotte had no evidence of inflammatory bowel disease, but did show evidence of irritable bowel syndrome. Specifically, Marcotte asserts:

> The ALJ incorrectly read the finding of Dr. Persaud that he did not have inflammatory bowel disease. The records clearly show that he has irritable bowel syndrome. That is not only through the record from Dr. Persaud but also from Dr. Shook his treating physician and even Dr. Martin the consultative examining physician assumed that he had irritable bowel syndrome.

Marcotte's Brief (docket number 15) at 5. While not entirely clear from his brief, Marcotte appears to also contend the ALJ's mistake clouded her consideration of the opinions of Dr. Shook and Dr. Martin, and the ALJ improperly disregarded their findings regarding irritable bowel syndrome. It is unclear what relief, if any, Marcotte seeks, but he concludes the ALJ erred "by incorrectly reading the records of Dr. Persaud, then attacks Dr. Persaud, Dr. Shook and Dr. Martin."[3]

In her response, the Commissioner acknowledges the ALJ "incorrectly referenced the impairments at step three[.]"[4] However, the Commissioner maintains the ALJ "correctly analyzed the medical records in formulating [Marcotte's] residual functional capacity."[5] Specifically, the Commissioner explains:

> At step three, the ALJ concluded [Marcotte] could not meet the listing for irritable bowel syndrome because the record showed he did not have irritable bowel syndrome. However, there is no listing for irritable bowel syndrome; the listing is for inflammatory bowel disease. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 5.06. The ALJ's decision should have stated plaintiff did not meet the inflammatory bowel disease listing because he did not have inflammatory bowel

---

[3] Marcotte's Brief (docket number 15) at 5.

[4] Commissioner's Brief (docket number 16) at 7.

[5] *Id.*

8

disease, a conclusion that is well supported and plaintiff does
not challenge.

Commissioner's Brief (docket number 16) at 7. The Commissioner concludes a deficiency in an ALJ's opinion-writing does not warrant reversal when the deficiency has no bearing on the outcome.

The Court agrees with the Commissioner. Contrary to Marcotte's assertion, in her decision, the ALJ did consider and address Marcotte's diagnosis of irritable bowel syndrome when determining his RFC.[6] Moreover, as the Commissioner points out, irritable bowel syndrome is not contained in the Listings, only inflammatory bowel disease is contained in the Listings. Thus, the Court believes that the ALJ's statement that Marcotte does not meet the Listings for irritable bowel syndrome is a typographical error, and she intended to write that Marcotte does not meet the Listings for inflammatory bowel disease. Accordingly, the Court will not remand this matter simply because the ALJ's decision states irritable bowel syndrome instead of inflammatory bowel disease when addressing the Listings at step three of the sequential evaluation. *See Hepp v. Astrue*, 511 F.3d 798, 806 (8th Cir. 2008) ("We have held that 'an "arguable deficiency in opinion-writing technique" does not require us to set aside an administrative finding when that deficiency had no bearing on the outcome.' *Robinson v. Sullivan*, 956 F.2d 836, 841 (8th Cir. 1992).").

### 2. *Medical Source Opinions*

#### a. *Dr. Persaud and Dr. Shook*

Marcotte argues the ALJ failed to properly evaluate and weigh the opinions of his treating physicians, Dr. Persaud and Dr. Shook. Marcotte also argues the ALJ failed to give "good" reasons for discounting Dr. Persaud's and Dr. Shook's opinions. Marcotte

---

[6] *See* Administrative Record at 22 (Dr. Martin), 23 (Dr. Shook and Dr. Persaud).

concludes this matter should be remanded for further consideration of Dr. Persaud's and Dr. Shook's opinions.

In June 2014, Marcotte met with Dr. Persaud complaining of rectal pain and burning. Upon examination, Dr. Persaud found "extensive" hemorrhoidal disease, but no evidence of inflammatory bowel disease. Marcotte's hemorrhoids were inflamed, but not thrombosed. Dr. Persaud treated Marcotte with stool softeners and ointment for his rectum.

Marcotte returned to Dr. Persaud in July 2015, complaining of bleeding and rectal pain. In reviewing Marcotte's treatment history, Dr. Persaud noted:

> [Marcotte] claimed he had continued pain and bleeding. He had urgency requiring immediate visits to the restroom. He had no evidence of [inflammatory bowel disease]. He claimed he had been under treatment for over two years. I first met [Mr. Marcotte] about a year ago. Treatment was initiated. I have not seen [him] since.

(Administrative Record at 513.) Upon limited examination, Dr. Persaud diagnosed Marcotte with irritable bowel syndrome, rectal pain, and bleeding. Dr. Persaud noted Marcotte was "having too much pain for rectal [examination]."[7]

On May 5, 2015, Dr. Shook filled out a treating source functional capacity report for Marcotte. Dr. Shook determined Marcotte could: (1) occasionally and frequently lift 10 pounds; (2) stand and walk for less than 2 hours in an 8-hour workday; and (3) sit for less than 2 hours in an 8-hour workday. Dr. Shook opined Marcotte would need to lie down 5-plus times per day after using the bathroom and recovering from back pain. Dr. Shook also found Marcotte could occasionally twist, stoop, crouch, and climb. Dr. Shook further indicated Marcotte would "need frequent [and] prolonged access to

---

[7] Administrative Record at 514.

bathroom breaks due to [irritable bowel syndrome]."[8]  Lastly, Dr. Shook estimated Marcotte would miss more than four days per month due to his impairments or treatment for his impairments.

Additionally, on June 15, 2015, Dr. Shook provided Marcotte's counsel with a letter documenting Marcotte's disability onset date.  Dr. Shook opined "I have reviewed [Marcotte's] records and would conclude and concur that he has been totally disabled since February 16, 2013, though again acknowledging that he was severely impaired for some time prior to this."[9]

The ALJ is required to "assess the record as a whole to determine whether treating physicians' opinions are inconsistent with substantial evidence of the record." *Travis v. Astrue*, 477 F.3d 1037, 1041 (8th Cir. 2007) (citing 20 C.F.R. § 404.1527(d)(2)). "Although a treating physician's opinion is entitled to great weight, it does not automatically control or obviate the need to evaluate the record as a whole." *Hogan v. Apfel*, 239 F.3d 958, 961 (8th Cir. 2001) (citing *Prosch v Apfel*, 201 F.3d 1010, 1013 (8th Cir. 2000)).  "The ALJ may discount or disregard such an opinion if other medical assessments are supported by superior medical evidence, or if the treating physician has offered inconsistent opinions." *Id.*; *see also Travis*, 477 F.3d at 1041 ("A physician's statement that is 'not supported by diagnoses based on objective evidence' will not support a finding of disability. *Edwards v. Barnhart*, 314 F.3d 964, 967 (8th Cir. 2003). If the doctor's opinion is 'inconsistent with or contrary to the medical evidence as a whole, the ALJ can accord it less weight.' *Id.*").  The ALJ may discount or disregard a treating physician's opinion if other medical assessments are supported by superior medical evidence, or if the treating physician has offered inconsistent opinions. *Hamilton v. Astrue*, 518 F.3d 607, 609 (8th Cir. 2008).

---

[8] *Id.* at 511.

[9] *Id.* at 512.

Also, the regulations require an ALJ to give "good reasons" for assigning weight to statements provided by a treating physician. *See* 20 C.F.R. § 404.1527(c)(2). An ALJ is required to evaluate every medical opinion he or she receives from a claimant. 20 C.F.R. § 404.1527(d). If the medical opinion from a treating source is not given controlling weight, then the ALJ considers the following factors for determining the weight to be given to all medical opinions: "(1) examining relationship, (2) treating relationship, (3) supportability, (4) consistency, (5) specialization, and (6) other factors." *Wiese*, 552 F.3d at 731 (citing 20 C.F.R. §§ 404.1527(c)). "'It is the ALJ's function to resolve conflicts among the opinions of various treating and examining physicians. The ALJ may reject the conclusions of any medical expert, whether hired by the claimant or the government, if they are inconsistent with the record as a whole.'" *Wagner*, 499 F.3d at 848 (quoting *Pearsall v. Massanari*, 274 F.3d 1211, 1219 (8th Cir. 2001)). The decision must contain specific reasons for the weight given to the treating source's medical opinion, supported by evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight. SSR *96-2P*, 1996 WL 374188 (1996).

Finally, an ALJ has a duty to develop the record fully and fairly. *Cox v. Astrue*, 495 F.3d 614, 618 (8th Cir. 2007); *Sneed v. Barnhart*, 360 F.3d 834, 838 (8th Cir. 2004); *Wilcutts v. Apfel*, 143 F.3d 1134, 1137 (8th Cir. 1998). Because an administrative hearing is a non-adversarial proceeding, the ALJ must develop the record fully and fairly in order that "'deserving claimants who apply for benefits receive justice.'" *Wilcutts*, 143 F.3d at 1138 (quoting *Battles v. Shalala*, 36 F.3d 43, 44 (8th Cir. 1994)); *see also Smith v. Barnhart*, 435 F.3d 926, 930 (8th Cir. 2006) ("A social security hearing is a non-adversarial proceeding, and the ALJ has a duty to fully develop the record."). "There is no bright line rule indicating when the Commissioner has or has not adequately developed

the record; rather, such an assessment is made on a case-by-case basis." *Mouser v. Astrue*, 545 F.3d 634, 639 (8th Cir. 2008) (citation omitted).

In her decision, the ALJ addressed the opinions of Dr. Persaud as follows:

> Though [Marcotte] had significant complaints related to bleeding and rectal pain in July 2015, gastroenterologist Dr. Persaud said he had not seen [Marcotte] in about a year. (Exhibit 21F/1) Upon examination, [Marcotte] had no tenderness, rebound tenderness, rigidity (guarding), or palpable abdominal masses. In addition, his abdomen was soft and he had normal bowel sounds. Moreover, though [Marcotte] had too much pain for a rectal exam, Dr. Persaud had noted that [he] was not in "acute" distress. (Exhibit 21F/2) While Dr. Persaud indicated that [Marcotte] may have a fissure, [he] was reporting that his insurance would not pay for Lidocaine/Nifedipine. (Exhibit 21F/1) Of note, Dr. Persaud did not support any work restrictions or disability.

(Administrative Record at 24.)

The ALJ addressed Dr. Shook's opinions as follows:

> First, although Dr. Shook is a treating source, he is not a specialist. In addition, his opinions and reports are without support from other substantial evidence in record. Likewise, Dr. Shook provided little explanation of the evidence relied on in forming his opinions and reports, rendering them less persuasive. Moreover, the medical evidence and [Marcotte's] activities reveal that [Marcotte] is not as limited as Dr. Shook determined. . . . Thus, the opinions of Dr. Shook are given *little weight*.

(Administrative Record at 25.)

Having reviewed the entire record, the Court finds that the ALJ properly considered and weighed the opinion evidence provided by Dr. Persaud and Dr. Shook. The Court also finds that the ALJ provided "good reasons" for discounting Dr. Persaud's and Dr. Shook's opinions. *See* 20 C.F.R. § 404.1527(c)(2); *Strongson*, 361 F.3d at 1070; *Edwards*, 314 F.3d at 967. Accordingly, even if inconsistent conclusions could be drawn

on this issue, the Court upholds the conclusions of the ALJ because they are supported by substantial evidence on the record as a whole. *Guilliams*, 393 F.3d at 801.

### b. Dr. Martin

Marcotte argues the ALJ failed to properly consider and weigh the opinions of Dr. Martin, a consultative examining physician who performed a comprehensive examination for Marcotte. Marcotte concludes that this matter should be remanded for further consideration of the opinions of Dr. Martin.

On March 25, 2014, at the request of Disability Determination Services, Dr. Martin performed a comprehensive examination for Marcotte. At the examination, Marcotte's primary complaints were spinal pain, bilateral shoulder discomfort, and irritable bowel syndrome. In reviewing Marcotte's medical records, Dr. Martin noted:

> a record of a colonoscopy done here more recently . . . shows that [Marcotte] has significant problems with hemorrhoids. He does have frequent stools[.] . . . The issue that he has is that he has to be very close to a restroom facility.

(Administrative Record at 375.) Upon examination, Dr. Martin diagnosed Marcotte with history of irritable bowel syndrome, per patient report. Dr. Martin noted, however, "it must be stated that it is not clear to me that [Marcotte] has really had adequate intervention and treatment for his irritable bowel complaints or his hemorrhoid complaints."[10] Dr. Martin opined he "would think that there would be some sort of intervention here that would be able to help him with [his irritable bowel issues]."[11] Dr. Martin suggested "if the irritable bowel issues and the hemorrhoid issues go untreated, he will need to have restroom facilities relatively close to his work activities as a matter of convenience."[12]

---

[10] Administrative Record at 377.

[11] *Id.*

[12] *Id.* at 378.

In considering medical evidence, an ALJ is required to evaluate every medical opinion he or she receives from a claimant. 20 C.F.R. §§ 404.1527(c), 416.927(c). If the medical opinion is not from a treating source, then the ALJ considers the following factors for determining the weight to be given to the non-treating medical opinion: "(1) examining relationship, (2) treating relationship, (3) supportability, (4) consistency, (5) specialization, and (6) other factors." *Wiese v. Astrue*, 552 F.3d 728, 731 (8th Cir. 2009) (citing 20 C.F.R. § 404.1527(d)). "'It is the ALJ's function to resolve conflicts among the opinions of various treating and examining physicians. The ALJ may reject the conclusions of any medical expert, whether hired by the claimant or the government, if they are inconsistent with the record as a whole.'" *Wagner v. Astrue*, 499 F.3d 842, 848 (8th Cir. 2007) (quoting *Pearsall v. Massanari*, 274 F.3d 1211, 1219 (8th Cir. 2001)).

Furthermore, when considering a physician's RFC assessment, an ALJ is not required to give controlling weight to the physician's assessment if it is inconsistent with other substantial evidence in the record. *Strongson*, 361 F.3d at 1070; *see also Travis v. Astrue*, 477 F.3d 1037, 1041 (8th Cir. 2007) ("A physician's statement that is 'not supported by diagnoses based on objective evidence' will not support a finding of disability. *Edwards v. Barnhart*, 314 F.3d 964, 967 (8th Cir. 2003). If the doctor's opinion is 'inconsistent with or contrary to the medical evidence as a whole, the ALJ can accord it less weight.' *Id.*"). "If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." Social Security Ruling, 96-8p (July 2, 1996).

Additionally, an ALJ has a duty to develop the record fully and fairly. *Cox v. Astrue*, 495 F.3d 614, 618 (8th Cir. 2007); *Sneed v. Barnhart*, 360 F.3d 834, 838 (8th Cir. 2004); *Wilcutts v. Apfel*, 143 F.3d 1134, 1137 (8th Cir. 1998). Because an administrative hearing is a non-adversarial proceeding, the ALJ must develop the record fully and fairly in order that "'deserving claimants who apply for benefits receive justice.'"

*Wilcutts*, 143 F.3d at 1138 (quoting *Battles v. Shalala*, 36 F.3d 43, 44 (8th Cir. 1994)); *see also Smith v. Barnhart*, 435 F.3d 926, 930 (8th Cir. 2006) ("A social security hearing is a non-adversarial proceeding, and the ALJ has a duty to fully develop the record."). "There is no bright line rule indicating when the Commissioner has or has not adequately developed the record; rather, such an assessment is made on a case-by-case basis." *Mouser v. Astrue*, 545 F.3d 634, 639 (8th Cir. 2008) (citation omitted).

In her decision, the ALJ thoroughly addressed and reviewed Dr. Martin's opinions and findings on physical examination of Marcotte.[13] The ALJ also thoroughly reviewed the various diagnoses presented by Dr. Martin, including irritable bowel syndrome.[14] The ALJ concluded "[t]he opinions and reports of Dr. Martin are given some weight, however, the medical evidence and [Marcotte's] activities reveal that [Marcotte] is not as limited as Dr. Martin determined."[15]

Given the ALJ's thorough review of Dr. Martin's physical examination of Marcotte, and having reviewed the entire record, including the ALJ's overall discussion of the objective medical evidence and Marcotte's treatment history, the Court finds the ALJ properly considered and weighed the opinion evidence provided by Dr. Martin. Specifically, the ALJ granted Dr. Martin's opinions "some" weight, and addressed inconsistencies within their opinions and the record as a whole. Therefore, the Court concludes that the ALJ properly considered and applied the factors for evaluating a consultative examiner's opinions, and properly granted "some" weight to Dr. Martin's opinions. *See Wiese*, 552 F.3d at 731. Accordingly, even if inconsistent conclusions could be drawn on this issue, the Court upholds the conclusions of the ALJ because they

---

[13] *See* Administrative Record at 21-22 (providing thorough review and discussion of Dr. Martin's physical examination of Marcotte).

[14] *Id.* at 22.

[15] Administrative Record at 22.

are supported by substantial evidence on the record as a whole. *Guilliams*, 393 F.3d at 801.

### 3. Credibility Determination

Marcotte argues the ALJ failed to properly evaluate his subjective allegations of disability. Marcotte maintains the ALJ's credibility determination is not supported by substantial evidence. The Commissioner argues the ALJ properly considered Marcotte's testimony, and properly evaluated the credibility of his subjective complaints.

When assessing a claimant's credibility, "[t]he [ALJ] must give full consideration to all the evidence presented relating to subjective complaints, including the claimant's prior work record, and observations by third parties and treating and examining physicians relating to such matters as: (1) the claimant's daily activities; (2) the duration, frequency, and intensity of the pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness and side effects of medication; [and] (5) functional restrictions." *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). An ALJ should also consider a "a claimant's work history and the absence of objective medical evidence to support the claimant's complaints[.]" *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008). The ALJ, however, may not disregard a claimant's subjective complaints "'solely because the objective medical evidence does not fully support them.'" *Renstrom v. Astrue*, 680 F.3d 1057, 1066 (8th Cir. 2012).

Instead, an ALJ may discount a claimant's subjective complaints "if there are inconsistencies in the record as a whole." *Wildman v. Astrue*, 596 F.3d 959, 968 ((8th Cir. 2010); *see also Lowe v. Apfel*, 226 F.3d 969, 972 (8th Cir. 2000) ("The ALJ may not discount a claimant's complaints solely because they are not fully supported by the objective medical evidence, but the complaints may be discounted based on inconsistencies in the record as a whole."). If an ALJ discounts a claimant's subjective complaints, he or she is required to "'make an express credibility determination, detailing the reasons for

discounting the testimony, setting forth the inconsistencies, and discussing the Polaski factors.'" *Renstrom*, 680 F.3d at 1066; *see also Ford v. Astrue*, 518 F.3d 979, 982 (8th Cir. 2008) (An ALJ is "required to 'detail the reasons for discrediting the testimony and set forth the inconsistencies found.' *Lewis v. Barnhart*, 353 F.3d 642, 647 (8th Cir. 2003)."). Where an ALJ seriously considers, but for good reason explicitly discredits a claimant's subjective complaints, the Court will not disturb the ALJ's credibility determination. *Johnson v. Apfel*, 240 F.3d 1145, 1148 (8th Cir. 2001); *see also Schultz v. Astrue*, 479 F.3d 979, 983 (8th Cir. 2007) (providing that deference is given to an ALJ when the ALJ explicitly discredits a claimant's testimony and gives good reason for doing so); *Gregg v. Barnhart*, 354 F.3d 710, 714 (8th Cir. 2003) ("If an ALJ explicitly discredits the claimant's testimony and gives good reasons for doing so, we will normally defer to the ALJ's credibility determination."). "'The credibility of a claimant's subjective testimony is primarily for the ALJ to decide, not the courts.'" *Vossen v. Astrue*, 612 F.3d 1011, 1017 (8th Cir. 2010).

In her decision, the ALJ addressed Marcotte's subjective allegations of disability as follows:

> In statements of record submitted to the Social Security Administration by [Marcotte], and/or his testimony, it was indicated that [he] could generally do the following: generally shower or bathe, brush his teeth, shave, comb his hair, and perform other personal hygiene tasks; get dressed; do some simple housekeeping; do some cooking; drive; go grocery shopping; do some outside work; do laundry; attend religious or family events; do some child care; be cooperative by his medical providers; go fishing as a hobby; watch some television daily; use[] the computer, and read magazines or books; walk for exercise, and engage in some work activity. (Exhibits 18E, 5F/2, 1F/5, 7F/14, 13F/2, 15F/2, 15F/18, 16F/6, and 21F/2) The activities [Marcotte] is able to engage in are not consistent with that of a disabled person. In addition, other than his hernia surgery in March 2015, what treatment [Marcotte] received for his severe impairments was

18

rather routine and conservative in nature. Moreover, there were times when [he] was essentially receiving no treatment for some of his severe impairments. Furthermore, an overview of the record reveals that [Marcotte's] alleged symptoms are inconsistent with the medical evidence in record.

Other factors eroding [Marcotte's] credibility include [him] testifying about significant symptoms and limitations. However, none of his alleged symptoms resulted in any emergency room visits. Additionally, there were no 3rd party statements contained in the record corroborating [his] alleged symptoms or limitations. Moreover, though [Marcotte] reported an inability to obtain a prescription for Lidocaine/Nifedipine due to such medications not being on his insurance list and his insurance being unwilling to pay for it (Exhibits 13F/1 and 21F/1), [he] was using his money to use tobacco (Exhibits 13F/1, and 21F/1 *also see* 16F/2, 16F/6, 16F/16, I6F/22, and 21F/1); also calling his credibility into question.

Attorney for [Marcotte] concurred that the shoulder surgeries are not solely the basis for disability ([Marcotte] had a 10% rating on both shoulders) and he has been able to work on cars and do stocking in a farm store earlier this year. The attorney said the disability is based on unpredictability of bowel disease. However, the GI specialist reports [Marcotte] does not have this condition and has utilized conservative treatment of symptoms. [Marcotte] did not return for one year and the post hearing notes of Dr. Persaud do not document disabling impairment.

Meanwhile [Marcotte] continues to work on cars, which by his report is self employment for cash, and he said he averages $500.00 per month. Also from October 2014 to March 2015 (before hernia repair) he worked part time at a farm store lifting 40 pound feed bags, again earning less than the SGA amount. [Marcotte] said he is drinking "very little" after a

> DUI (driving under influence) arrest in December 2014 but he
> is not in alcohol treatment.
>
> In sum, based on the total record, the [Marcotte's] symptoms
> and impairments are not as severe as alleged and the
> undersigned has not given great weight to [his] implicit
> allegation that he is unable to engage in any and all kinds of
> full-time, competitive, gainful employment on a sustained
> basis.

(Administrative Record at 25-26.)

It is clear from the ALJ's decision that she thoroughly considered and discussed Marcotte's treatment history, medical history, functional restrictions, activities of daily living, work history, and use of medications in making her credibility determination. Thus, having reviewed the entire record, the Court finds that the ALJ adequately considered and addressed the *Polaski* factors in determining Marcotte's subjective allegations of disability were not credible. *See Johnson*, 240 F.3d at 1148; *see also Goff*, 421 F.3d at 791 (an ALJ is not required to explicitly discuss each *Polaski* factor, it is sufficient if the ALJ acknowledges and considers those factors before discounting a claimant's subjective complaints); *Tucker v. Barnhart*, 363 F.3d 781, 783 (8th Cir. 2004) ("The ALJ is not required to discuss each *Polaski* factor as long as the analytical framework is recognized and considered. *Brown v. Chater*, 87 F.3d 963, 966 (8th Cir. 1996)."). Accordingly, because the ALJ seriously considered, but for good reasons explicitly discredited Marcotte's subjective complaints, the Court will not disturb the ALJ's credibility determination. *See Johnson*, 240 F.3d at 1148. Even if inconsistent conclusions could be drawn on this issue, the Court upholds the conclusions of the ALJ because they are supported by substantial evidence on the record as a whole. *Guilliams*, 393 F.3d at 801.

## 4. *Hypothetical Question*

Marcotte argues the ALJ's hypothetical question to the vocational expert was incomplete because it did not properly account for all of his impairments. Marcotte also argues the ALJ's hypothetical did not contemplate all of his functional limitations. Marcotte maintains this matter should be remanded so that the ALJ may provide the vocational expert with a proper and complete hypothetical question.

Hypothetical questions posed to a vocational expert, including a claimant's RFC, must set forth his or her physical and mental impairments. *Goff*, 421 F.3d at 794. "The hypothetical question must capture the concrete consequences of the claimant's deficiencies." *Hunt v. Massanari*, 250 F.3d 622, 625 (8th Cir. 2001) (citing *Taylor v. Chater*, 118 F.3d 1274, 1278 (8th Cir. 1997)). The ALJ is required to include only those impairments which are substantially supported by the record as a whole. *Goose v. Apfel*, 238 F.3d 981, 985 (8th Cir. 2001); *see also Haggard v. Apfel*, 201 F.3d 591, 595 (8th Cir. 1999) ("A hypothetical question 'is sufficient if it sets forth the impairments which are accepted as true by the ALJ.' *See Davis v. Shalala*, 31 F.3d 753, 755 (8th Cir. 1994) (quoting *Roberts v. Heckler*, 783 F.2d 110, 112 (8th Cir. 1985).").

Having reviewed the entire record, the Court finds that the ALJ thoroughly considered and discussed both the medical evidence and Marcotte's testimony in determining Marcotte's impairments and functional limitations.[16] The Court further determines that the ALJ's findings and conclusions are supported by substantial evidence on the record as a whole. Because the hypothetical question posed to the vocational expert by the ALJ was based on the ALJ's findings and conclusions, the Court concludes the ALJ's hypothetical question properly included those impairments which find substantial support in the record as a whole. *See Goose*, 238 F.3d at 985; *see also Forte v. Barnhart*, 377 F.3d 892, 897 (8th Cir. 2004) (an ALJ need only include those work-related

---

[16] *See* Administrative Record at 20-26.

limitations that he or she finds credible).  Therefore, the ALJ's hypothetical question was sufficient.

## V.  CONCLUSION

The Court finds the ALJ properly considered and weighed the medical opinion evidence in the record.  The Court also finds the ALJ properly determined Marcotte's credibility with regard to his subjective complaints of disability.  Finally, the ALJ's hypothetical question to the vocational expert properly included those impairments and functional limitations substantially supported by the record as a whole.  Accordingly, the Court determines that the ALJ's decision is supported by substantial evidence and shall be affirmed.

## VI.  ORDER

1.    The final decision of the Commissioner of Social Security is **AFFIRMED**;

2.    Plaintiff's Complaint (docket number 4) is **DISMISSED** with prejudice; and

3.    The Clerk of Court is directed to enter judgment accordingly.

DATED this  20th  day of September, 2016.

JON STUART SCOLES
CHIEF MAGISTRATE JUDGE
NORTHERN DISTRICT OF IOWA